WINCHESTER (UNITED STATES v.). See Case No. 16,739.

WINCHESTER REPEATING ARMS CO. (OSCANYAN v.).    See Case No. 10,600.

WINDEL (POLK v.).    See Case No. 11,251.

## Case No. 17,867.

### In re WINDER.

[2 Cliff. 89.] [1]

Circuit Court, D. Massachusetts.    Oct. Term, 1862.

HABEAS CORPUS—WHEN WRIT OF RIGHT SERVICE —PREVENTION BY FORCE.

1. Courts of justice may refuse to grant the writ of habeas corpus where no probable ground for relief is shown in the petition, or where it appears that the petitioner is duly committed for felony or treason plainly expressed in the warrant of commitment.

2. But where probable ground is shown that the party is in custody under or by color of the authority of the United States, and is imprisoned without just cause, and therefore has a right to be delivered, the writ of habeas corpus then becomes a writ of right, which may not be denied.

3. The service of the writ in this case was prevented by force. The writ was ordered to be placed on the files of the court, to be served when and where its service might become practicable.

This was a petition for a writ of habeas corpus. The circumstances of the case are fully set forth in the petition and the opinion of the court.

To the Honorable Nathan Clifford, an Associate Justice of the Supreme Court of the United States, sitting in the District of Massachusetts:—

The petition of William H. Winder respectfully represents, that he is and always has been a loyal citizen of the United States, and was a resident of the commonwealth of Pennsylvania until the time of the arrest and restraint hereinafter mentioned, and has been for a long time past confined in Fort Warren, a military fort of the United States within the district of Massachusetts, under the command of Colonel Justin Dimmick, where and by whom he is illegally restrained of his liberty. That your petitioner whilst so resident in the commonwealth of Pennsylvania was arrested at his residence in the city of Philadelphia upon the 11th day of September, A. D. 1861, under a warrant purporting to be issued by a United States commissioner, upon a charge of conspiracy to overthrow the government of the United States, under the act of congress of the 13th July, 1861. Your petitioner avers that he was entirely innocent of this charge, or of any other offence against the United States, and at once urged an immediate hearing of the case, which was refused, upon the alleged ground of other engagements of the United States attorney, and the hearing was postponed to the afternoon of the 13th Septem-

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

ber, 1861, your petitioner remaining in custody. Your petitioner was again present at the day to which the hearing of his case was adjourned, ready and anxious to meet the charge against him, when, after a considerable delay, the United States attorney stated that he had no charge to prefer against your petitioner. He then said that an order had been received for your petitioner's delivery to the United States marshal, and your petitioner was discharged by the commissioner; and a telegraphic message, of which the following is a copy, was produced and handed to the counsel of your petitioner, who was present with him:—

"Dated Wash'g. Sept. 11, 1861. To Geo. A. Coffey, U. S. District Attorney: Have telegraphed Marshal Millward to arrest Wm. H. Winder and transfer him to Fort Lafayette. S. Cameron, Secretary of War."

Your petitioner was, then at about 5 o'clock of the afternoon of September 13, 1861, without any warrant or cause of commitment being exhibited or stated either to him or to his counsel, immediately seized and taken into custody by William Millward, United States marshal for the Eastern district of Pennsylvania, and was on the same afternoon removed to the city of New York by a person believed to be a deputy or officer of said marshal, and upon reaching the city of New York was carried to Fort Lafayette, a military fort of the United States, under an order, a copy of which he has since obtained, and which is as follows:—

"Philadelphia, Sept. 13, 1861. Lieut.-Col. Martin Burke, Commanding Fort Hamilton: Dear Sir,—Permit me to introduce to you my deputy, Mr. Sharkey, who carries with him Mr. Winder, to be delivered to your custody, per order of secretary of war. Very respectfully, your ob't servant, Wm. Millward, U. S. Marshal."

Your petitioner avers that neither at the time of his said arrest, nor at any time since, has he ever seen the said order or pretended order of the secretary of war, which, for reasons hereinafter stated, he believes never existed. Your petitioner remained so unlawfully restrained of his liberty in Fort Lafayette, under color of some order or pretended order of the secretary of war or some other person, until some time towards the end of October or beginning of November, 1861, when he was transferred, under some order or direction to him unknown, to Fort Warren, near Boston, a military fort of the United States under command of Colonel Justin Dimmick, in which place he has ever since been detained in custody, and now is unlawfully restrained of his liberty. Ignorant of the cause of his unlawful arrest and detention, and conscious of entire innocence, your petitioner addressed a letter to the secretary of state upon the subject of his imprisonment, of which the following is a copy:—

"Fort Warren, 5th Dec. 1861. To the Hon. W. H. Seward, Secretary of State: Sir,—In

accordance with your letter of instructions, read to the parties confined in this fort, to address you directly in relation to their release, I proceed to do so, relying upon the implied assurance of your letter, that these communications will receive your personal attention and reply. I have been confined now nearly thirteen weeks, and during all that time I have been unable to learn of any charge whatever; consequently, 1 can only state that I am unconscious of word or act inconsistent with the character of a true American citizen; and hence I infer that my arrest did not emanate from the head of a department, and that the names of such, when employed in this matter, were merely pro forma, without attention to, and probably without knowledge of, the document to which they were attached. In this state of affairs, I will respectfully submit to your consideration the propriety of allowing me, on parole, to visit Washington for the examination of my case, and I will add my conviction that a short interview will satisfy you of some error in my arrest and confinement, which have proved seriously detrimental. Should the granting the parole prove to be inconsistent with your purposes, I trust I shall not be disappointed in my expectation of receiving a statement of any charges against me, fully, specifically, and with all the evidence in possession of the department, together with the names of all parties making charges. Respectfully, your obedient servant, W. H. Winder."

No answer was ever received by your petitioner to this letter, and time rolling on, and remaining in his original ignorance of the cause of his unlawful imprisonment, your petitioner addressed a letter, of which the following is a copy, to the secretary of war:—

"I have been held in confinement in Forts Lafayette, N. Y., and Warren, Mass., without process or form of law, now more than five months, having been arrested in Philadelphia, my residence, from whence, by order of Simon Cameron, secretary of war, by telegraphic despatch, I was transferred to those distant points. Immediately upon my arrest, in my absence, my office, desks, and chests, &c., were all broken open, and all my papers, a collection of thirty years, ransacked, on pretence of hunting treasonable matter during the few months previous; the sanctity of private correspondence was violated and malignantly calumniated by the publication of pretended contents of letters thus seized; other parties were also thus grievously slandered by statement of falsely alleged contents. and I debarred of all opportunity to contradict such infamous publications. My letter-books, writings, and letters are still in possession of public officials. Even pictures twenty years old found in my possession were misrepresented to slander me. My correspondence at Philadelphia since my arrest has been intercepted and detained. I am to this hour in ignorance of

the causes of my arrest and detention. Governor Seward, secretary of state, caused an order of his to be read to the prisoners, in which he stated that the employment of paid counsel would only have the effect of prejudicing the case of such parties, would be deemed an offence, and would occasion procrastination of imprisonment; his order required all applications to be addressed directly to him, or through unpaid parties. In accordance with this order, never having employed counsel. on the 5th December last, I addressed a letter to the secretary of state, in which, referring to his order as giving assurance that he would read and reply to our communications, I proceeded to state my long confinement, my ignorance of the causes therefor, and requesting permission to go to Washington for an investigation of my case, or for a statement of the charges against me, if any, the full testimony, and the names of my accusers, or else an unconditional discharge. To this hour no reply has been received. My release was tendered to me on condition of taking the oath of allegiance, &c., &c. I declined to accept release upon conditions. A second time release was offered upon condition of taking the oath, which offer was accompanied by a letter of explanation from Governor Seward, intended to remove supposed objections, in stating that support of the constitution did not include support of the individual members of the executive. My objection, being radical, applied to all tests or conditions, which might be supposed to admit that I had done anything inconsistent with the character of a true American, and I of course declined this second offer of release. In common with my fellow-members of the company to which I am attached, I took an oath to support the constitution, and I am still under its full responsibility. I am ready in common with all others, on every proper and lawful occasion, to take it a thousand times. But as a discriminating test, imputing past and future intended wrong, it is not possible for me thus voluntarily to calumniate myself. The interior of Fort Warren, with the mens sibi conscia recti, is preferable to release purchased at the expense of character. So far from being willing thus to calumniate myself, I have challenged and I do now challenge a comparison of record of fidelity to the constitution and the Union with all concerned in my arrest and detention, confident that the result will furnish none of them with cause for self-gratulation. In this state of the case, the secretary of war announces that the president will grant 'amnesty' for past offences and take 'parole' against future ones, of all persons 'except spies in the service of the insurgents, or others whose release at the present moment may be deemed incompatible with the public safety.' Thus I should be turned loose, stained with an unnamed guilt of the past, supposed to be covered by the 'amnesty,' and

the equally nameless guilt of the future, averted by the 'parole,' allowing a censorious world to impute any wrong it may please, as being concealed beneath the cloaks of 'amnesty' and 'parole,' and to which, by my acceptance, I would give at least a quasi admission, and certainly would leave upon myself the color of guilt, and without power of vindication against such imputation. The 'spies' and those whose liberation may be 'deemed incompatible with the public safety' will have probably the opportunity of perfect vindication, while those favored with 'amnesty' and 'parole' will stand forever shaded beneath those clouds. It would seem to be an exquisite aggravation of the original wrong which the order admits and purports to remedy or correct. The wrong done was illegal incarceration without charge; the remedy now proposed is to confess that wrong has been done, and to receive 'amnesty' therefor; to acknowledge intention to do future wrong, and then to give 'parole' to forego such intention. The condition, in a Northern state, of a man accepting 'amnesty' and giving 'parole,' would be a confession of guilt bearing in its train intolerable consequences. For these reasons, and many others which naturally present themselves, and would be stated if necessary, the undersigned trusts the secretary of war will find it consistent with his duty to reinstate him at home to his original position before arrest. If there be any charge of crime against me, I am ready to meet it. If there be none, I trust the secretary will see that to impose conditions on me as the price of my liberation, is to aggravate the wrong which will then stand confessed. It might be simple justice, alike to the administration as to the prisoners, to have the informers who misled the defendant exposed to view and to just punishment. I have the honor to be your obedient servant, W. H. Winder. Fort Warren, 22d Feb'y, 1862. Hon. E. D. Stanton, Secretary of War, Washington City." .

Your petitioner's books and papers had all been seized and taken by the marshal, at the time of his arrest; but having been, previously to his arrest, in correspondence with Gen. Simon Cameron, and believing it to be impossible that that officer would, of his own motion, have authorized his arrest, he wrote to him upon the 15th March, 1862, as follows:—

"Fort Warren, 15th March, 1862. Hon. Simon Cameron: Sir,—It was by order from you, through a telegraphic despatch, that I was taken from Philadelphia to Fort Lafayette and placed in confinement there, from whence I was transferred to this fort, in which I am confined, still ignorant of the cause which induced you to issue that order. The object of my writing this letter is to obtain from you information at whose instance and upon what representations you were influenced to the issue of the order for my confinement in Fort Lafayette. I believe I do not err in supposing the order could not have been of your own motion, but was upon the statement of party or parties who ought not, and who you supposed would not, willingly mislead you, and I trust that my reliance on your readiness to afford me the information will not prove delusive. I feel myself entitled to this consideration at your hands, and am unwilling to doubt your inclination to accord it to me. I am, respectfully, your obedient servant, &c., W. H. Winder."

To this letter an answer was received, as follows:—

"Lochiel, March 24, 1862. W. H. Winder, Esq.: Sir,—You surprise me by saying in your letter of the 15th inst., received to-day, that it was by my order you were taken from Philadelphia to Fort Lafayette and placed in confinement. I knew nothing of your arrest until I saw the fact stated in the newspapers, and, being at the time closely engaged in the discharge of my official duties, neglected to inquire into the cause, presuming, however, that it was done by order of the state department, which had charge of such cases as I supposed yours to be. Very respt'y, Simon Cameron."

And the following further correspondence took place between your petitioner and Gen. Cameron:—

"Fort Warren, 31 March, '62. Hon. Simon Cameron, Lochiel, near Harrisburg: Sir,—I have to thank you for your prompt reply to my request for information as to the causes which induced you to issue an order for my transfer to Fort Lafayette. Your reply of the 24th, stating your surprise at learning that I had been sent there by your order, and that you knew nothing of my arrest until you saw it in the papers, and presumed it had been done by order of the state department, confirms me in my supposition that your name had been used either without your knowledge or inadvertently signed to a paper without heeding its contents. It was obtained somehow through the district attorney. I give you a copy of the document on which Col. Burke took charge of me and placed me in Fort Lafayette:—'Philadelphia, Sept. 13, 1861. Lt.-Col. Martin Burke, commanding Fort Hamilton. Dear Sir,—Permit me to introduce to you my deputy, Mr. Sharkey, who carries with him Mr. Winder, to be delivered to your custody, per orders of secretary of war. Very respectfully, your ob't servant, Wm. Millward, U. S. Marshal.' I am respectfully, your obedient servant, W. H. Winder."

"Fort Warren, 31 March, 1862. Hon. Simon Cameron, Lochiel, near Harrisburg. Dear Sir,—Since writing you to-day I have received the following copy of despatch from Philadelphia:—'Washington, Sept. 11, 1861. To Geo. A. Coffey. U. S. Dist. Att'y.: Have telegraphed Marshal Millward to arrest Wm. H. Winder and transfer him to Fort Lafa-

yette. S. Cameron, Sec'y War.' I have supposed this might call to your mind the communication of Mr. Coffey to which apparently it is a reply. I am respectfully, your obedient servant, &c. W. H. Winder."

"Lochiel, 2 April, 1862. W. H. Winder, Esq.: Sir,—I have enclosed your letter of the 31st, received to-day, to the secretary of state, and disavowed all knowledge of your arrest, with a request for your release, if you have been held by my direction. Very respectfully, Simon Cameron."

"Fort Warren, 5th April, 1862. Hon. S. Cameron, Lochiel, near Harrisburg: Dear Sir, —I have been much gratified by the receipt of your letter of 2d April, in which you advise me of your having sent my first letter of 31st March to the secretary of state, with a request for my release, if I have been held by your direction. This is satisfactory, and is all the action the case requires at your hands, unless, indeed, a disregard of your request should render it proper for your own vindication against an act which you repudiate, but the responsibility of which is placed by the record on your name. I am, respectfully, your ob't serv't, &c., W. H. Winder."

It thus appears that no order was ever given by the secretary of war for the arrest of your petitioner, and he was left in absolute darkness as to the authority, or supposed authority, by which he was originally imprisoned and was then detained. In the month of May last, commissioners to visit and report upon the cases of those who had been arrested and were detained in the military prisons of the United States, came to Fort Warren, and your petitioner was summoned to appear before them. Then for the first time, and nearly eight months after his arrest, upon the 7th May, 1862, your petitioner was informed that his offence was his correspondence and his writings for the newspapers. Your petitioner at once demanded the production of any writings of his upon which any charge of violating the laws of the United States could be based. None such were produced, and your petitioner now asserts what he has before stated, that none such can be produced. Your petitioner was then told by the commissioners that his case would be taken into consideration, but he has never heard further from them upon the subject, nor has any offence been since ever imputed or stated to him, or the reason of his arrest and detention, nor has, so far as he is aware, any further or other action ever been taken in regard to him or his case. Your petitioner avers that he has now been nearly fourteen months unlawfully restrained of his liberty, and detained in custody under color of some pretended authority of the United States, without any specific crime or offence under or violation of its laws being imputed to him, in disregard of the plain provisions of the laws and constitution of the United States, to the benefit of which the humblest citizen is entitled. Your petitioner now solemnly reasserts what he has heretofore more than once stated, that he is innocent of any crime or offence

against his country or its government and laws, and he respectfully prays your honor to grant a writ of habeas corpus to be directed to Col. Justin Dimmick, commandant of Fort Warren, and to his officers having charge of your petitioner, commanding him and them to bring your petitioner before your honor, to do, submit to, and receive what the laws may require. And he will ever pray, &c. W. H. Winder.

By his agent and attorney,
George W. Biddle.

Boston, October 25th, 1862.

Wm. B. Reed, Geo. W. Biddle, Peter McCall, and Geo. S. Hillard, for petitioner.

CLIFFORD, Circuit Justice. This is a petition for a writ of habeas corpus, wherein the petitioner represents that for a long time past he has been confined in Fort Warren, a military fort of the United States, in this district, under the command of Colonel Justin Dimmick, where and by whom he is illegally restrained of his liberty.

As a foundation of the application, and to show that the prayer of the petitioner ought to be granted, he alleges that he is and always has been a loyal citizen of the United States, and that until the time of his arrest, as therein set forth, he had been a resident of the commonwealth of Pennsylvania, and the complaint is, that while he was so resident there he was, on the 11th of September, 1861, arrested at his residence in the city of Philadelphia, under a warrant purporting to have been issued by a commissioner of the United States, upon a charge of conspiracy to overthrow the government of the United States.

According to the petition that warrant was founded upon the act of congress of the 13th of July, 1861 [12 Stat. 255]; but the petitioner avers that he was entirely innocent of that charge or of any other offence against the United States; that he urged an immediate hearing of the case on the day of his arrest, which was refused on the ground that the district attorney had other engagements, and the same was postponed to the 13th of the same month, when he was again present, and ready and anxious to meet the charge, but that the district attorney, after stating that he had no charge to prefer against him, informed him that an order had been received that he should be delivered to the marshal of the United States for that district; that he was accordingly discharged by the commissioner, and was then and there, without any warrant or cause of commitment being exhibited to him or to his counsel, immediately seized and taken into custody by William Millward, marshal of that district. When the district attorney, however, informed the petitioner that an order had been received that he, the petitioner, should be delivered to the marshal, he at the same time, as the petitioner states, handed to his counsel, who was present with him, a telegraphic despatch, addressed to the district attorney, of the following purport:—

"Have telegraphed Marshal Millward to ar-

rest Wm. H. Winder, and transfer him to Fort Lafayette. S. Cameron, Sec'y of War."

Recurring to the copy of the telegram as given in the petition, it will be seen that it was dated at Washington on the 11th of September, 1861, two days before the petitioner was taken into custody by the marshal; and the petitioner states that on the same afternoon that he was so seized, he was removed to the city of New York, by a person believed to be a deputy or officer of the marshal, and upon reaching that city was carried to Fort Lafayette, a military fort of the United States, under an order of which the following is a copy:—

"Permit me to introduce to you my deputy, Mr. Sharkey, who carries with him Mr. Winder, to be delivered to your custody per order of the secretary of war."

Said order or letter was dated at Philadelphia on the 13th of September, 1861, and was addressed to the commandant of Fort Hamilton, and was signed by the marshal.

Having stated these proceedings, the petitioner avers that he has never seen the order or pretended order of the secretary of war, and, for reasons set forth in the petition, he does not believe that any such order ever existed, but that he remained in Fort Lafayette, so unlawfully restrained of his liberty, under color of some order or pretended order of the secretary of war or of some other person, until some time towards the last of October or the first of November, 1861, when he was transferred, under some order or direction to him unknown, to the military fort before mentioned in this district, under the command of Colonel Justin Dimmick, in which place he has ever since been detained in custody, and now is unlawfully restrained of his liberty.

On the 5th of December, 1861, he addressed a letter to the secretary of state, soliciting leave to visit Washington, on parole, for the examination of his case, or that he might be furnished with a statement of the charges against him; but as no reply was received to the communication, it will not be reproduced at the present time. Failing to get any reply to that letter, on the 22d of February, 1862, he addressed another letter to the present secretary of war, but, so far as appears, the communication was never answered. Believing it to be impossible that the former secretary of war, General Simon Cameron, would of his own motion have authorized his arrest, the petitioner states that he, on the 15th of March, 1862, wrote to General Cameron upon the subject, informing him that it was by his order that he, the petitioner, was seized and taken from Philadelphia to Fort Lafayette, and there placed in confinement, and afterwards transferred to Fort Warren, and inquired at whose instance and upon what representations he had been induced to issue the order.

To that letter, as the petitioner states, a reply was received under date of the 24th of March, 1862; and he gives what purports to be a copy of the answer. Suffice it to say, without attempting to give the precise language, the writer expresses his surprise at the remark of the petitioner that it was by his order that he had been taken from Philadelphia to Fort Lafayette and placed in confinement. On the contrary, he expressly states that he knew nothing of the petitioner's arrest until he saw the fact stated in the newspapers, and adds several circumstances confirmatory of that statement. Confirmed by that letter in the opinion that the name of the former secretary of war had been used without his knowledge, or inadvertently, the petitioner states that on the 31st of the same month, he wrote General Cameron another letter, thanking him for his prompt reply, and furnished him with a copy of the document under which the commandant of Fort Hamilton took charge of him and placed him in Fort Lafayette, and also a copy of his telegraphic despatch to the district attorney, which was handed to his counsel at the time he was discharged by the commissioner. Considering that the reply of General Cameron is a brief one, it will be given in the language of the copy set forth in the petition.

"Lochiel, April 2, 1862. W. H. Winder, Esq. Sir,—I have enclosed your letter (of the 31st) received to-day, to the secretary of state, and disavowed all knowledge of your arrest, with a request for your release, if you have been held by my direction. Very respectfully, Simon Cameron."

Various other matters are stated in the petition, which need not be particularly noticed at this stage of the case, except to say that the petitioner, in conclusion, avers that he has been nearly fourteen months unlawfully restrained of his liberty, and detained in custody, under color of some pretended authority of the United States, without any specific crime or offence being imputed to him, in disregard of the plain provisions of the constitution of the United States and the laws of congress, to the benefit of which every citizen is entitled; he accordingly prays the court to grant this writ of habeas corpus.

By the fourteenth section of the act of the 24th of September, 1789 [1 Stat. 81], it is provided, among other things, that either of the justices of the supreme court of the United States, as well as the judges of the district courts, shall have power to grant writs of habeas corpus for the purpose of inquiring into the cause of commitment; provided, that writs of habeas corpus shall in no case extend to prisoners in jail, unless where they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify. Additional authority upon the subject is also conferred by subsequent

acts of congress, but it is unnecessary to refer to any other act, as the petition in this case is obviously founded upon the before-mentioned provision of the judiciary act.

Courts of justice may refuse to grant the writ of habeas corpus where no probable ground for relief is shown in the petition, or where it appears that the petitioner is duly committed for felony or treason plainly expressed in the warrant of commitment; but where probable ground is shown that the party is in custody under or by color of the authority of the United States, and is imprisoned without just cause, and therefore has a right to be delivered, the writ of habeas corpus then becomes a writ of right, which may not be denied, but ought to be granted to every man who is committed or detained in prison or otherwise restrained of his liberty. Authorities in support of these positions are unnecessary, as wherever the principles of the common law are adopted or recognized they are universally acknowledged.

Although the petitioner was arrested, in the first place, by virtue of a warrant issued by a commissioner of the United States, still the case, as stated in the petition, shows that he was discharged from that arrest, and that no warrant of any kind has since been issued against him. Assuming the case to be as stated in the petition, he was not only arrested and imprisoned under an order having no other sanction than that of a telegraphic despatch, but it now appears from the petition that the secretary of war, who was supposed to have sent or authorized the telegram containing the order, denies all knowledge of the arrest of the petitioner, except as he learned the fact from the newspapers, and entirely disavows all responsibility for the proceedings.

Nothing need be added to the narrative of the facts as set forth in the petition, to demonstrate that the petition shows probable ground to conclude that he is imprisoned and restrained of his liberty without just cause. Undoubtedly he is in custody under or by color of authority of the United States, and such being the fact. all the requisites known to the law are shown to entitle the petitioner to the writ for which he prays; and on that state of the case, it becomes the duty of the court to grant it. When these pre-requisites appear, it is not competent for the court to deny the application. because the court has in such case no discretion upon the subject, but the writ must issue as a matter of right.

All these remarks must be understood as based entirely upon the facts as stated in the petition, and, of course, can have no application to any different state of facts which may be shown upon the return.

The United States marshal having declined to serve the writ, it was placed in the hands of B. F. Bayley, a deputy sheriff, who made the following return thereupon:—

"I, Benjamin F. Bayley, being duly sworn, do depose and say that I am one of the deputies of the sheriff of the county of Suffolk, in the commonwealth of Massachusetts; that on Tuesday, the 28th day of October, A. D. 1862, there was placed in my hands for service a writ of habeas corpus, a copy of which is hereto annexed, directed to Colonel Justin Dimmick, commandant of Fort Warren, or to any officer under him having the charge of William H. Winder, commanding him to bring the body of said Winder, then confined in said Fort Warren, to be dealt with as to law and justice should appertain; that upon receiving said writ, I immediately proceeded to Commercial Wharf, in the port of Boston, where the steamboat plying between the said port and said Fort Warren was lying, and stated to the captain in charge of said boat, that I desired to proceed therein to Fort Warren as a messenger from the United States court, with papers for said Colonel Justin Dimmick. The said captain told me that his orders were positive not to allow any one to go in said boat without a pass from Colonel Dimmick, said orders having been received on Friday last, the 24th instant; that being prevented from proceeding in said boat, I did on the morning of Wednesday, the 29th day of October, 1862, receive from the counsel of said Winder, certain instructions in regard to the service of the said writ of the following tenor:—'You are entrusted with the service of a writ of habeas corpus, issued by order of the Honorable Nathan Clifford, a justice of the supreme court of the United States, to be served upon Colonel Justin Dimmick, at Fort Warren. You will have with you the original writ, with an attested copy thereof. You will procure a proper conveyance to take you to Fort Warren, and land there in order to serve the writ as directed. Upon landing or meeting the sentry, or other person at the fort whom you may first meet, you will respectfully inquire for Colonel Dimmick, stating you have a paper to deliver to him from Judge Clifford, a judge of the supreme court of the United States. Should you be allowed to see Colonel Dimmick, you will respectfully deliver to him the original writ. saying at the same time, This is a writ from Judge Clifford, and at once return to Boston, when you will draw up a statement of the time and mode of service. Should the sentry or party with whom you first communicate refuse you permission to see Colonel Dimmick, you will ask by what authority you are refused; if none is stated, and the refusal be persisted in, you will hand a copy of the writ to the sentry or other party, asking him to deliver it to Colonel Dimmick, saying you will wait for an answer. and bring it if received. If this be refused, you will return at once. Should you be refused permission to land, and the refusal be persisted in upon your stating that you have a paper for Colonel Dimmick, you will at once return and make a report of

WINDSOR (Case No. 17,868)

what you have done. Should Colonel Dimmick be absent from the fort, you will communicate or endeavor to communicate with the officer in command, in the manner hereinabove set forth.' That upon receiving said instructions I hired a sail-boat in the port of Boston aforesaid, manned with two men, and was accompanied by John H. Clark, a reputable citizen of the county of Middlesex, in this commonwealth, and proceeded therein to Fort Warren, to serve the said writ according to my instructions; that I arrived near to said Fort Warren, at about three o'clock of the afternoon of said 29th day of October, when I perceived a body of about fifty armed men drawn up in military array near the place of landing; that upon nearing the landing I was hailed by a sentinel and told by him to keep off; that I then told said sentinel that I had a communication to make to Colonel Dimmick, and approached a little nearer to said landing; that the said force was then marched down to the landing, when I was again peremptorily ordered by a person in command of said force, to keep off, and was prevented from landing; that finding it impossible to land or approach nearer to the said fort, I directed the boat, in which I was, to be put about, and returned to the port of Boston, where I arrived at about five o'clock of the afternoon of the same day, having been forcibly prevented from serving the said writ; that I verily believe that had I attempted to effect a landing at said Fort Warren, after having been warned away, as hereinbefore stated, I should have been prevented from so doing by the force of armed men drawn up at the landing, and that to the best of my belief it was impossible for me to land and serve the said writ. And that further I say not. Benj. F. Bayley.

"Sworn and subscribed this 30th day of October, A. D. 1862. G. S. Hillard, Justice of the Peace."

Mr. Reed then addressed the court as follows:—"May it please your honor. Having presented to the court this affidavit, the counsel for the relator beg leave to say that we came to this jurisdiction to solicit the process of the law in order to release from a long and, as we believe, unlawful imprisonment (for nearly fourteen months), a fellow-citizen of Pennsylvania. We deferred any action until the district attorney should have full opportunity of communicating with the authorities at Washington. We came prepared, and anxious to meet and discuss any grave questions of law which the officers of the government might raise in opposition to this discharge. The court granted the writ of relief which was asked for, but its execution has been evaded and resisted, so as to prevent the consideration and decision of these questions. In the case decided by the chief justice of the United States, that of Merriman, the military officer to whom the process was directed, made a return in form respectful; and this, too, at a time of local disturbance

and on the edge of actual war. But here in Massachusetts, many hundred miles away from any scene of war, where perfect peace reigns, and every peaceful relation of life is maintained, and the court is regularly transacting the ordinary and profitable business of the government, here in Massachusetts, the writ which your honor granted is both evaded and resisted, and an imprisoned American citizen is denied the common right of knowing who are his accusers and of what he is accused. Your honor's writ is that of the United States, and that peaceful writ the military force of the government prevents us from executing. At this moment we can do no more. We submit the facts this affidavit discloses. We beg to express to your honor our high sense of the kindness and consideration we have received at your hands, in this effort to assert the supremacy of the law and the rights of the citizen."

CLIFFORD, Circuit Justice. The court does not perceive that anything more can now be done to effect service of this writ. The service appears to have been prevented by force. The court deeply regrets that officers of the United States should obstruct process out of a court of the United States, especially this process. But those officers are at present beyond the control of the law, and the court has not the command of the physical force needful to effect a service of this writ at the present time. Let the writ be placed on file, to be served when and where service may become practicable.